195 F.2d 319
 SAFEWAY STORES, Inc.
v.
ARNALL, Director of Price Stabilization.
 No. 595.
 United States Emergency Court of Appeals.
 Submitted February 19, 1952.
 Decided March 13, 1952.
 Writ of Certiorari Denied June 2, 1952.
 
 See 72 S.Ct. 1058.
 Elisha Hanson, Washington, D. C., with whom Arthur B. Hanson, Garland Clarke and Calvin H. Cobb, Jr., all of Washington, D. C., were of counsel, for complainant.
 Holmes Baldridge, Asst. Atty. Gen., Edward H. Hickey, Chief General Litigation Section and William J. Holloway, Jr., Attorney, Department of Justice, Washington, D. C., with whom Joseph H. Freehill, Acting Chief Counsel, Herbert N. Maletz, Associate Chief Counsel, James A. Durham, Asst. Chief Counsel, and Pauline B. Heller, and Kathryn H. Baldwin, Attorneys, Office of Price Stabilization, all of Washington, D. C., were of counsel, for respondent.
 Before MARIS, Chief Judge, and MAGRUDER, McALLISTER and LINDLEY, Judges.
 MARIS, Chief Judge.
 
 
 1
 The complainant which operates a chain of retail food stores has challenged the validity of Ceiling Price Regulation No. 15 by a protest which it filed with the respondent on November 23, 1951, alleging that the regulation is "unfair and inequitable as it is applied to Protestant and to others similarly situated". CPR 15 had been issued March 28, 1951,[1] effective April 5, 1951; its pricing provisions were made mandatory as of April 30, 1951, which date was extended to May 14, 1951. The respondent dismissed the protest on the ground that it was not filed until November 23, 1951 which was more than six months after the last of these dates, contrary to the provisions of Section 407(a) of the Defense Production Act of 1950, as amended, 50 U.S.C.A.Appendix, § 2107(a). Furthermore the respondent stated that it does not "* * * appear that there are such `new grounds' arising after the effective date of such regulation as will permit a subsequent filing."
 
 
 2
 The complainant here challenges the dismissal of the protest, asserting the existence of certain facts which it contends constituted "new grounds" supporting the late filing of its protest. The respondent urges that these grounds are insufficient and has moved for the dismissal of the complaint for want of jurisdiction.
 
 
 3
 Section 407(a) of the act provides in this connection as follows: "At any time within six months after the effective date of any regulation or order relating to price controls under this title, or, in the case of new grounds arising after the effective date of any such regulation or order relating to price controls, within six months after such new grounds arise, any person subject to any provision of such regulation or order may, in accordance with regulations to be prescribed by the President, file a protest specifically setting forth objections to any such provision and affidavits or other written evidence in support of such objections."
 
 
 4
 It will be seen that the act requires that a protest against a regulation or order relating to price controls must be filed within six months after the effective date of the regulation or order unless it is based on new grounds arising after such date, in which case it may be filed within six months after such new grounds arise. The denial or partial denial of a protest timely filed is a condition precedent to the exercise of jurisdiction by this court under Section 408(a) of the act, 50 U.S.C.A.Appendix, § 2108(a).[2] The question whether we have jurisdiction to entertain the present complaint accordingly depends upon whether the complainant's protest was based upon new grounds arising on or after May 23, 1951. For if not it was filed out of time, its denial furnishes no basis for the present complaint and the respondent's motion to dismiss the latter must be granted. We turn, therefore, to consider the new grounds alleged by the complainant.
 
 
 5
 In issuing CPR 15 the respondent's expressed purpose was to remove from the price stabilization program distortions and abnormalities that had been brought about by the general freeze technique involved in the General Ceiling Price Regulation. To effectuate this program CPR 15 provided a percentage markup-on-cost method of establishing ceiling prices, such as had been employed by the Office of Price Administration under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq. In order to act quickly the respondent generally employed the markups established by OPA during the years 1943 to 1946. However the respondent pointed out in his statement of considerations accompanying CPR 15 that in some categories "markups have changed substantially since the war." In issuing this regulation, therefore, the Director made some adjustments. In his statement of considerations the respondent also stated: "The Office of Price Stabilization is now organizing a study of margin and earning figures for food distributors in order to obtain more recent comprehensive data. If the study should indicate that the ceiling prices established under this regulation are either too low or too high, the regulation will be promptly revised to reflect the results of the survey."
 
 
 6
 It is upon the statement last quoted that the complainant relies as the basis for the new grounds of protest which it asserts have arisen since the effective date of CPR 15. Its contention is that this statement of the respondent constituted a promise to conduct such a survey and to adjust the price ceilings of CPR 15 accordingly. The complainant insists that the respondent has not kept his promise although a reasonable time in which to do so has expired and that this breach of promise constitutes new grounds which support the late filing of its protest.
 
 
 7
 We find no merit in this contention. We put to one side the fact that the respondent now is and for some time past has been conducting such a survey. For it is perfectly clear that in making this investigation and study the respondent is merely carrying out the duty imposed upon him by Section 402(c), 50 U.S.C.A.Appendix, § 2102(c), of continuously studying the effect of the regulations in order to adjust them as conditions change. The mere fact that the respondent has failed to complete such a study with respect to the effect of CPR 15 could not of itself operate to render that regulation no longer generally fair and equitable if it was generally fair and equitable at its inception.
 
 
 8
 Moreover, in the present case there is no allegation by the complainant that CPR 15 has become invalid since May 23, 1951 by reason of the failure of the respondent to complete his study or for any other reason. On the contrary all five of the objections to CPR 15 asserted in Section V of the complaint are directed to the initial validity of the regulation and none of them asserts or even intimates that the regulation was rendered invalid after May 23, 1951 by reason of grounds of invalidity which arose after that date. We think, however, that a protest filed more than six months after the effective date of a regulation by reason of new grounds of objection arising thereafter must be based solely on the new grounds of objection thus subsequently arising. The fact that new grounds of objections have arisen cannot operate to reopen to protest grounds then barred from protest by the six months limitation of Section 407(a). This court so held under the similar provisions of Section 203(a) of the Emergency Price Control Act of 1942,[3] and we think that the same construction must be placed on Section 407(a) of the Defense Production Act. Any other construction would tend to nullify the six months limitation on protests which that section imposes.
 
 
 9
 In its brief opposing the motion to dismiss the complainant for the first time alleges other new grounds which it says support the late filing of its protest. These may be stated as follows: CPR 15 was issued March 28, 1951 under the Defense Production Act of 1950 as originally enacted. The legislation, so far as it related to price stabilization, was due to expire by the terms of Section 716(b), 50 U.S.C.A. Appendix, § 2166, on June 30, 1951. By reading the act into the regulations issued pursuant thereto CPR 15 was also to expire on June 30, 1951. Subsequently the expiration date of the act was changed by Congress first to July 31, 1951 and then to June 30, 1952. Consequently according to complainant's reasoning CPR 15 was impliedly reissued on June 30, 1951 and again on July 31, 1951 and was subject to protest on all grounds of initial invalidity within six months after those dates. Since the complainant's protest was filed within six months after those dates it is argued that it was in time and should, therefore, have been considered on its merits and not dismissed as out of time.
 
 
 10
 Since these alleged new grounds of objection were not included in the protest or complaint they may not now be considered by us. In any event there is no factual basis for them. For the fact is that the Defense Production Act of 1950 did not expire either on June 30, 1951 or July 31, 1951. On the contrary prior to its expiration on each of those dates it was amended by substituting the later expiration date.[4] The act must, therefore, be regarded as one continuous statute remaining in force unchanged, except as amended, until its ultimate expiration. In other words, by virtue of the amendments the the act did not terminate either on June 30, 1951 or July 31, 1951, but has continued in force from the time of its original enactment until the present day. It follows, therefore, that CPR 15 likewise continued in force by virtue of its original promulgation and was not reissued on June 30, 1951 or July 31, 1951 either impliedly or otherwise. The amendments of the act which postponed its expiration date accordingly did not affect the limitation upon protests contained in Section 407(a) or operate to toll that period with respect to the complainant's protest.
 
 
 11
 A judgment will be entered dismissing the complaint.
 
 
 
 Notes:
 
 
 [1]
 16 F.R. 2735
 
 
 [2]
 Compare Bogart Packing Co. v. Brown, Em.App.1943, 138 F.2d 422
 
 
 [3]
 Harlem Metal Corporation v. Brown, Em. App.1943, 136 F.2d 242, 244; Bibb Manufacturing Co. v. Bowles, Em.App.1944, 140 F.2d 459, 461
 
 
 [4]
 See Public Law 69, approved June 30, 1951, and Public Law 96, approved July, 31, 1951