202 F.2d 166
 PUROFIED DOWN PRODUCTS CORP.
v.
FREEHILL, Director of Price Stabilization.
 No. 634.
 United States Emergency Court of Appeals.
 Submitted January 22, 1953.
 Decided February 18, 1953.
 
 Nicholas J. Chase and Harry M. Rubin, Jr., Washington, D. C., for complainant.
 Holmes Baldridge, Asst. Atty. Gen., Edward H. Hickey, Chief, General Litigation Section, Katherine Hardwick Johnson, Atty., Department of Justice, Herbert N. Maletz, Chief Counsel, James A. Durham, Associate Chief Counsel, Office of Price Stabilization, Washington, D. C., Israel Convisser, Chief, Court Review Division, Office of Price Stabilization, Brooklyn, N. Y., Richard L. Hirshberg, Atty., Office of Price Stabilization, Arlington, Va., for respondent.
 Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.
 LINDLEY, Judge.
 
 
 1
 This complaint, filed under Section 408(a) of the Defense Production Act of 1950, as amended, 50 U.S.C.A.Appendix, § 2061 et seq., followed respondent's order dismissing in part a protest filed by complainant, under Section 407(a), on October 13, 1952, challenging the validity of CPR 87, issued October 19, 1951, and Amendment 1 thereto, issued April 16, 1952. The averments attacking the validity of CPR 87 were dismissed for the reason, as respondent held, that the six month statute of limitations, found in Section 407(a), had expired and protestant had failed to specify any new ground arising within six months prior to the filing of the protest. If respondent's action was proper, this complaint should likewise be dismissed, Safeway Stores v. Arnall, Em.App., 195 F.2d 319, for a timely protest is a condition precedent to the exercise of our jurisdiction. However, if the protest was timely, then the cause should be remanded to respondent for determination on the merits.
 
 
 2
 Complainant processes and sells waterfowl feathers and down. In April 1951, the National Production Authority, by its order M-56, limited the sale of such wares to the Department of Defense and the General Services Administration. During July and August 1951, complainant entered into four written contracts with the latter, calling for sale and delivery of specified quantities at specified prices.
 
 
 3
 On October 19, 1951, respondent issued CPR 87 which established maximum prices on the sales prices of such goods to GSA lower than those fixed by complainant and GSA in their preexisting contracts, but which contained an exemption clause, which provided, in substance, that preexisting established contract prices could be paid and received if the contract with GSA was in writing, and, as of October 19, 1951, the vendor had ownership and physical possession of, or was legally bound by a written firm commitment to accept, feathers with which to fill the contract. Complainant brought itself within the terms of this exemption, and, hence, its then existing contract prices were not affected. On November 29, 1951 complainant entered into still another sales agreement with GSA, which provided that the selling price should not exceed the lower of (1) the contract price which was the then prevailing ceiling established by CPR 87, or (2) any applicable ceiling price established by the Office of Price Stabilization.
 
 
 4
 On April 16, 1952, Amendment 1 to CPR 87 became effective. As of that date, complainant held substantial inventories which were to be applied upon its contracts with GSA entered into in July and August 1951, which had been exempt under CPR 87. The amendment dealt with the exemption proviso, changing it to provide, in substance, that, in addition to the prior requirements of (1) written contract, and (2) ownership, possession or a firm commitment it was necessary that a vendor have received written notice of inspection and approval of the feathers by and from GSA, prior to April 16, 1952, in order to be able to charge more than the prescribed maximum prices.
 
 
 5
 Complainant was unable in many instances to comply with this new provision. This being so, it faced substantial reductions in anticipated revenues from these preexisting contracts. Consequently, it filed a protest, attacking for the first time the the validity of the ceiling prices contained in CPR 87. Respondent dismissed, on the ground that the prices had been in effect since October 19, 1951 and that the protest, coming on October 13, 1952, was too late. Respondent further held that no new grounds had been shown to have arisen within six months of the date of protest.
 
 
 6
 Complainant asserts that Amendment 1 to CPR 87, effective April 16, 1952, a date within six months of October 13, 1952, constituted new grounds for the filing of its protest. We agree.
 
 
 7
 Respondent specifically exempted any investment in, or contract for, feathers, made by complainant prior to the issuance of CPR 87. Consequently, at that time complainant had no valid ground to protest any retroactive effect that CPR 87 might have had on its business. This was likewise true of the contract entered into by complainant on November 29, 1951. This action, respondent, strenuously urges, constituted a voluntary submission to the terms of CPR 87. And the six month period certainly began to run at that time. But this argument loses sight of the fact that complainant is trying to protect an investment or commitment made prior to price control. Insofar as the four contracts made in July and August 1951 are concerned, complainant's business was not subjected to regulation until the amendment on April 16, 1952. The contract of November 29, 1951, on the other hand, was entered into after the institution of price control. Complainant then knew its position with respect to maximum prices permitted it and the cost of acquiring feathers necessary to perform any contractual obligation. We are of the opinion that the later contract should in no way impair complainant's right to challenge the retroactive effect of CPR 87 brought about by the Amendment of April 16, 1952.
 
 
 8
 Judgment will enter denying respondent's motion to dismiss the complaint, setting aside the order dismissing the protest in part and remanding the cause to respondent to consider and determine on the merits such dismissed portions of complainant's protest.